UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEN BEHLMANN AUTOMOTIVE SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| THE REYNOLDS AND REYNOLDS CO., | ) ) ) ) |
| Defendant. | ) |

Case No. 4:12CV317 CDP

## MEMORANDUM AND ORDER

Ken Behlmann Automotive Services, Inc. is an automobile dealer that has repeatedly contracted with defendant The Reynolds and Reynolds Company. Reynolds is a dealer-management systems vendor that provides software and services to automobile dealerships. Behlmann claims that Reynolds charged it for services it did not order, and overcharged for those it did order. Behlmann brought this case in state court seeking a declaration as to the amount it owes Reynolds, as well as damages for claims related to Reynolds' alleged breach of contract and misrepresentations.

Reynolds removed this case on diversity grounds, and Behlmann now seeks a remand on the grounds that the amount in controversy does not exceed $75,000. Reynolds opposes remand, and moves to compel arbitration. Because the face of the petition shows that the amount in controversy is more than $75,000, I will

deny Behlmann's motion to remand. Based on the broad scope of the contract between the parties, I will grant Reynolds' motion to compel arbitration.

## Background

Reynolds is an Ohio corporation that provides computer hardware, software, maintenance, and support to automobile dealerships. Reynolds provided such products and services to Behlmann, a Missouri auto dealer, for many years. In September of 2005, Behlmann entered into an agreement with Reynolds for purchase and maintenance of the ERA management system, with monthly maintenance and support fees of $6,088.26. The agreement consisted of five documents: (1) the Authorization Letter; (2) the Master Agreement; (3) the Customer Guide; (4) the Defined Terms; and (5) the Exhibits referencing the specific services and goods. The agreement contained an arbitration clause which covered any disputes "except for disputes involving [the] failure to pay amounts due." The arbitration clause applied regardless of "whether the controversy is based on contract, tort, strict liability, or other legal theory."

Despite the agreement, the monthly maintenance fees were consistently higher than the agreed upon price, and by 2010, averaged $8,913.90 per month. Behlmann only agreed to two specific fee increases, and thus alleges that it was overcharged monthly between February 2006 and January 2011. In January of 2010, Behlmann discussed with Reynolds the desire to terminate certain services.

After continued back-and-forth between the parties, the parties met in November of 2010 and came to a new agreement. Products and services previously identified by Behlmann would be terminated, and the remaining services would continue for five months at approximately $7,000 per month. Between February and May of 2011, the invoices Behlmann received from Reynolds did not reflect the $7,000 price, but rather $19,041.75, $20,188.39, $20, 134.48, and $20,174.66, respectively. Behlmann refused to pay these invoices, and all services were terminated on May 19, 2011. Behlmann received an invoice from Reynolds on December 31, 2011, totaling $89,875.33. Reynolds then referred the account to a debt collection agency, which sent Behlmann an invoice in excess of $102,000.

Behlmann brought this suit in the 21st Judicial Circuit Court of St. Louis County, seeking declaratory judgment, as well as other relief related to Reynolds' alleged breach of contract and misrepresentations. Reynolds timely removed the case to this court on diversity grounds, and subsequently moved to compel arbitration. Behlmann has filed for remand, arguing that although the parties are diverse, the amount in controversy is less than $75,000.

## **Discussion**

*Motion to Remand*

Federal courts are courts of limited jurisdiction. *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005) (citing *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994)). As such, federal courts are authorized to hear cases only as provided by the Constitution and by statute. A defendant may remove an action from state court to federal district court if the action is within the court's original jurisdiction. 28 U.S.C. § 1441(b). A defendant seeking removal and opposing remand has the burden of establishing proper jurisdiction. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Any doubts about the propriety of removal are to be resolved in favor of remand. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

District courts have diversity jurisdiction over civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. Behlmann argues that there is less than $75,000 in controversy. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). The object of this litigation is the unpaid invoice, and Behlmann itself states in its petition that the unpaid amount is anywhere from $89,000 to $102,000.

Behlmann argues that the invoice for $102,000 cannot be used to calculate the amount in dispute because that invoice was provided by a non-party to this

- 4 -

suit. Behlmann offers no case to support this position, and I find it unconvincing on its face. Behlmann further argues that because it is willing to pay $26,000, that amount should be subtracted from the total amount in controversy, bringing the total below $75,000.[1] Even if the $102,000 was ignored (the only way Behlmann's argument would work), I disagree that the $26,000 should be subtracted from the amount in controversy. Behlmann stated in its petition that it would be willing to pay up to $26,000, but this amount has not actually been paid.

Although "[i]n general, the amount of controversy is usually viewed from the perspective of the plaintiff," *Eisler v. Med. Shoppe Int'l, Inc.*, No. 4:05CV2272 JCH, 2006 WL 415953 at *2 (E.D. Mo. Feb. 21, 2006) (citing *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969)), courts have at times found that the more appropriate consideration is "the pecuniary result to either party which the judgment would directly produce." *Id.* (citing *NCMIC Ins. Co. v. Sammon*, 2005 WL 2648687 at *3 (D. Minn. Oct. 17, 2005) (internal citations and quotations omitted)). This is especially true when "the values to the parties are not the same and where the defendant has removed the action." *Id.* (citing *Hatridge*, 415 F.2d at 815). Even if Behlmann does not consider the $26,000 to be "in controversy," that amount will be included in the total pecuniary result that a

---

[1] Behlmann came to this conclusion using $98,028, as pled in Reynolds' counterclaim, as the maximum amount due. Subtracting the $26,000 would thus bring the total amount in controversy to $72,028.

judgment would produce.  The total amount at issue here is thus clearly greater than $75,000.

I further find that since the face of the petition establishes the amount in controversy, Reynolds does not have any additional burden to prove by a preponderance of evidence that the amount exceeds the $75,000 threshold.  The cases cited by Behlmann explicitly state that such a burden exists on the removing party when "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum." *In re Minn. Mut. Life. Ins. Co. Sales Practice Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).  Since the petition here does allege an amount over the jurisdictional minimum, as discussed above, Reynolds has nothing left to prove.  I will therefore deny Behlmann's motion to remand.

## *Motion to Compel Arbitration*

"[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4).  "[The Eighth Circuit] has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e. whether the dispute *falls within the scope* of the arbitration

agreement." *Id.* (emphasis in original). Behlmann does not challenge the validity of the arbitration clause, but only its applicability to this suit.

"The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Medcam*, 414 F.3d at 975. The district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quotation omitted).

The 2005 contract between the parties contained an arbitration clause, stating:

> Any disputes between us related directly or indirectly to an Order will be settled by binding arbitration (except for disputes involving your failure to pay amounts due to us or violation of any proprietary rights of Other Providers or us) under the American Arbitration Association Rules except as specifically stated herein. It does not matter whether the controversy is based on contract, tort, strict liability, or other legal theory . . . The Federal Arbitration Act, 9 U.S.C. Sections 1 [through] 15, not state law, will govern the ability to arbitrate any and all claims and all aspects of any arbitration.

Docket No. 12-1 at 10-11. Reynolds now seeks to compel arbitration of the present dispute pursuant to this clause, while Behlmann argues that this cases falls clearly within the exception for "disputes involving [the] failure to pay amounts due."

Two other district courts have interpreted the instant arbitration clause. *Lupo, LLC v. Reynolds and Reynolds Co.*, 729 F. Supp. 2d 350 (D. Me. 2010); *S.*

*Dade Dealership, LLC v. Reynolds and Reynolds Co.*, No. 10-24346-CIV-UNGARO (S.D. Fl. Mar. 7, 2011). Both have held that "the most sensible reading of the exception to the mandatory arbitration clause is that it was intended to apply narrowly to the simple uncontested collection action – that is, where the customer's liability for a sum certain is not in question but the customer is delinquent in paying this amount to Reynolds." *Lupo*, 729 F. Supp. 2d at 355. Ohio law, which applied in *Lupo* as it does here, instructs the courts to construe any doubt or ambiguity in the contract against the drafter. *Id.* at 354. Nonetheless, "given the breadth of [the] mandatory arbitration provision," the *Lupo* court found that the arbitration exception could only reasonably apply to undisputed amounts. *Id.* at 355.6

    I agree with the reasoning in *Lupo* and *South Dade*. At issue here is not a simple failure to pay an undisputed amount, but rather a dispute about the amount itself. Furthermore, as in both prior cases, Behlmann has brought claims under tort and breach of contract, "legal theories explicitly denoted as arbitrable in the mandatory arbitration clause." *Lupo*, 729 F. Supp. 2d at 355-56. Reducing these claims to a mere "failure to pay amounts due" would allow the exception to swallow the rule. *Id.* at 356. I therefore find that the mandatory arbitration clause in the contract between the parties encompasses this lawsuit.

The parties also disagree over where arbitration should be held.  Behlmann argues that Version 4 of the Customer Guide, which was the operable version at the time of the parties' agreement, controls.  Version 4 provides that "The arbitration will be held in the city where our regional sales office closest to your main office is located."  Docket No. 12-1 at 11.  Reynolds argues that Version 8, the current version of the Customer Guide, should control.  Version 8 provides that arbitration shall take place in Dayton, Ohio.  Docket No. 7-3 at 12.  Reynolds argues that Version 8 should control because Version 4, which Behlmann agreed to, contains the following provision:

> We may, from time to time, update, amend and supplement this Customer Guide.  Such changes will be effective on the date the Customer Guide change is posted on this website . . . If Reynolds makes any change to the Customer Guide that you believe affects you in a materially adverse manner, you may promptly notify Reynolds in writing specifying the nature of your complaint.  You and Reynolds will work in good faith to resolve your complaint.

Docket No. 12-1 at 3.  Accordingly, Version 8, with its requirement that arbitration be held in Ohio, became effective immediately upon its posting to Reynolds' website.

Behlmann argues that allowing Version 8 to control would be an impermissible unilateral modification to the contract between the parties.  *See Nagle v. Heating & Air Conditioning Co. v. Haskett*, 585 N.E.2d 866, 868 (Ohio Ct. App. 1990).  While it is generally true that contracts cannot be modified

unilaterally, the parties expressly allowed for unilateral modification in the terms of the original contract.  "Unilateral changes are permissible when the contract allows these changes." *Associated Or. Veterans v. Dept. of Veterans' Affairs*, 712 P.2d 103, 107 (Or. 1985).  *See also Vill. of Plymouth v. City of Willard*, 546 N.E.2d 1372, 1374-75 (Ohio Ct. App. 1988).  Nor do I find that the contract clause allowing for unilateral modification is unconscionable, since both parties are sophisticated business entities, the changes were publicly posted, and Behlmann was afforded an opportunity to contest and negotiate the modified terms.  *See, e.g., Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 815 N.E.2d 1126, 1131 (Ohio Ct. App. 2004).  I therefore find that Version 8 of the Customer Guide is the operable form of the contract between the parties, and arbitration shall take place in Dayton, Ohio.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand [#10] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to compel arbitration and stay proceedings [#7] is granted, and its alternative motion to dismiss is denied.

**IT IS FURTHER ORDERED** that this case is stayed pending completion of the arbitration, and the parties must file a notice to the court within ten days of the conclusion of arbitration.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2012.